UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NABIL SALAMEY, et al.,

        Plaintiffs,                  Case No. 23-cv-10630

v.                                      Hon. Jonathan J.C. Grey

HOUSSAM SALAMI, et al.,

        Defendants.
_____/

## OPINION AND ORDER

      This opinion and order addresses five pending motions: (1) a joint motion to extend the dispositive motion deadline (ECF No. 51); (2) a motion to quash deposition of Defendant Houssam Salami's wife, Hanadi Salami (ECF No. 41); (3) a motion to compel the production of Plaintiffs' tax returns (ECF No. 46); (4) Carter-Jones Companies, Inc.'s ("Carter") motion for summary judgment (ECF No. 52); and (5) Plaintiffs' motion for leave to file sur-reply. (ECF No. 60.) The Court also addresses service of Defendant Dan Atchison. The Court finds that the parties have fully and adequately briefed the motions and therefore considers them without oral argument. E.D. Mich. LR 7.1(f).

I.  INTRODUCTION

With respect to the allegations against Carter, the facts are largely undisputed. (ECF No. 56-1, PageID.1464.) This case involves a construction dispute between longtime friends, Nabil and Sonia Salamey and Houssam Salami.[1] Around 2019, Nabil and Sonia asked Houssam to build their house in Canton, Michigan (the "Construction Project"). Houssam agreed. However, the parties never entered into a written contract. (ECF No. 52, PageID.581 ¶3.) Despite this, there was an undisputed understanding that Houssam would be paid some undetermined fee for his work on the project. (*Id.*)

To facilitate payment for construction costs, Nabil opened a bank account with Community Financial Credit Union on which Houssam was an authorized signor (the "Construction Account"). (*Id.*, PageID.582 ¶5.) Checks from this account reflect that both Nabil and Houssam were owners and authorized users of the Construction Account. (*Id.*, PageID.583 ¶6.) The parties agreed that all payments for the

---

[1] Some documents in the record refer to Nabil as "Billy" and Houssam as "Sam." Due the similarities in last names, first names are utilized throughout this opinion and order.

construction would come out of the Construction Account. (*Id.*, PageID.582 ¶5.)

Houssam owns and operates SS Designs, LLC ("SS Designs"), a home builder. (*Id.*, PageID.580 ¶2.) Houssam and SS Designs hired all subcontractors, including Dan Atchison, and purchased all materials necessary to complete the Construction Project. (*Id.*, PageID.582 ¶5.) SS Designs sources items from Carter, a lumber and materials supplier. (*Id.*, PageID.580 ¶2.)

SS Designs maintains a credit account with Carter which allows SS Designs to purchase materials for multiple projects on credit. (*Id.*) Carter employs Houssam as an outside sales representative and provides sales commissions to Houssam. (*Id.* ¶1.) At all times, Houssam was an at-will employee of Carter and was not a supervisory or managerial employee of Carter. (*Id.*)

For the Construction Project, Houssam used his SS Designs account with Carter to purchase building materials. (*Id.*, PageID.583 ¶6.) Houssam also used this account to purchase materials for other projects unrelated to Nabil and Sonia's Construction Project. (*Id.*, PageID.584 ¶8.) When he made payments to Carter on behalf of SS Designs, Houssam

3

first had to inform Carter which invoice each check should be applied to. (*Id.*) If Houssam provided no instruction, Carter credited payments towards the oldest open invoice on the SS Designs account. (*Id.*) In certain circumstances, Houssam failed to inform Carter of how to direct the checks from the Construction Account. (*Id.*, PageID.585 ¶10.) Sometimes checks intended to be credited towards the Construction Project were instead applied to other, unrelated, SS Designs invoices. (*Id.*)

It is undisputed that certain checks were applied to the wrong project, although the parties dispute how many checks were applied erroneously or to how many invoices those checks were applied correctly. (ECF No. 56-1, PageID.1465.) Houssam testified that he intended to conduct an accounting at the end of the project and deduct any erroneous charges from his ultimate fee. (ECF No. 52, PageID.586 ¶11.) Nabil and Sonia also raise additional allegations of misconduct against Houssam, but these allegations are not relevant to the instant opinion which solely addresses Carter.

## II. DISCOVERY MOTIONS

4

First, the parties filed a joint motion to extend the dispositive motion deadline on July 8, 2024, due to witness depositions which were taken late in the discovery process. (ECF No. 51, PageID.568.) As the dispositive motion deadline has passed, two motions for summary judgment were timely filed, and no additional request has been made to file a late brief, the motion is **DENIED AS MOOT**.

Second, SS Designs and Houssam filed a motion to quash the deposition of Hanadi Salami on May 17, 2024. (ECF No. 41) Hanadi Salami's deposition was taken on June 4, 2024. (ECF No. 56-2, PageID.1492.) As such, the motion to quash (ECF No. 41) is **DENIED AS MOOT**.

Finally, SS Designs and Houssam filed a motion to compel the production of plaintiffs' tax returns on June 19, 2024. (ECF No. 46.) Plaintiffs responded to the motion on July 1, 2024. (ECF No. 50.) SS Designs and Houssam argue that the tax returns are relevant as they will confirm the cost of the construction.

Under Federal Rule of Civil Procedure 26(b)(1):

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

5

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The scope of discovery should be "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "A party may seek discovery of a tax return if it is relevant to the subject matter in dispute and a compelling need exists for the return because the information is not readily available from another source." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, No. 14-CV-10922, 2016 WL 3418554 at *4 (E.D. Mich. June 22, 2016).

It is undisputed that all payments were made to Houssam through the Construction Account, Houssam purchased all materials and hired all subcontractors for the Construction Project, and the plaintiffs' claims involve the alleged misuse of their funds by SS Designs and Houssam. These facts suggest that the moving defendants both have access to the information they request via other means, chiefly statements from the Construction Account, and that the tax returns are not relevant to the plaintiffs' claims.

However, the tax returns are potentially relevant to the defendants' counterclaims which rely on the cost of the construction project since

6

Houssam's fee allegedly was intended to be a percentage of the overall construction cost. (ECF No. 9.) Even though they are potentially relevant, there is no compelling need to produce the tax returns as all information relevant to the cost of the project is within Houssam and SS Designs' control. It is unlikely that the tax returns would provide any additional information about the cost of the construction. Consequently, the motion to compel and extend discovery (ECF No. 46) is **DENIED**.

### III. DEFENDANT CARTER'S MOTION FOR SUMMARY JUDGMENT

Defendant Carter filed its motion for summary judgment on July 26, 2024. (ECF No. 51) The plaintiffs filed a combined reply to both Carter and Houssam's motions for summary judgment on August 16, 2024. (ECF No. 56.) Carter replied on August 29, 2024. (ECF No. 57.) The plaintiffs then filed a motion for leave to file a sur-reply and sanctions. (ECF No. 60.) The Court will first address the motion for leave to file a sur-reply before proceeding to the summary judgment analysis.

**A. Motion for leave to file sur-reply brief (ECF No. 60)**

A non-moving party generally has no right to respond to a reply brief, and the applicable local rule does not allow for a sur-reply. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); E.D.

Mich. LR 7.1. Because the moving party is entitled to the last word on the matter, sur-replies are highly disfavored when the moving "party's reply did not raise any new legal arguments or introduce new evidence." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012). Thus, the party wishing to file a sur-reply must file a motion for leave that sets forth "good cause." *NCMIC Ins. Co. v. Smith*, 375 F. Supp. 3d 831, 835 (S.D. Ohio 2019).

Furthermore, parties must comply with the requirements of Local Rule 7.1(a) and seek concurrence before filing a motion. "Failure to seek concurrence prior to filing a motion is cause for issuing an immediate denial of the relief requested." *All About Chores LLC v. Lyon*, No. 18-CV-12000, 2019 WL 2590750, at *1 (E.D. Mich. June 25, 2019) (citing *U.S. v. Ramesh*, No. 02-80756, 2009 WL 817549, at *6 (E.D. Mich. March 26, 2009); *Tubbs Bros., Inc. v. Prime Eagle, LLC*, No. 12-13104, 2012 WL 3065451 (E.D. Mich. July 27, 2012)). The Court first notes that plaintiffs failed to seek concurrence before filing their motion for leave to file sur-reply brief. This alone is grounds for denial of the motion.

The sole issue discussed in the motion for sur-reply is the alleged misrepresentation of the holding of *Cedric Kushner Promotions, Ltd. v.*

8

*King*, 533 U.S. 158 (2001). For the reasons discussed below, *see* Section III.C., Carter accurately cited *Cedric Kushner Promotions* for the general principle that for a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, "an 'enterprise' requires at least two distinct entities." (ECF No. 57, PageID.1606.) Carter has not misrepresented the law and the Court advises plaintiffs' counsel to use caution in the future before seeking sanctions. Plaintiffs' motion to file a sur-reply is **DENIED**. The Court will also disregard Carter's supplemental brief. (ECF No. 61.)

### B. Aiding in Conversion (Count II)

The Court has supplemental jurisdiction over plaintiffs' state law conversion claim pursuant to 28 U.S.C. § 1367. The Court elects to exercise its supplemental jurisdiction over the aiding in conversion claim against Carter in the interests of judicial economy as the claim involves similar factual findings as the RICO claim. The factual findings for both the RICO claim and the conversion claim are centered around Carter's relationship with Salami. "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).

9

Consequently, the Court applies Michigan law to plaintiffs' state law claims.

Plaintiffs claim that Carter can be held liable for aiding in conversion under MCL § 600.2919a, which states that:

> A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees.

The Michigan Supreme Court has held that for the purposes of MCL § 600.2919a, a "person must know that the property was stolen, embezzled, or converted in order to be held liable. That the person 'should have known' is not sufficient to impose liability under the statute." *Echelon Homes, L.L.C. v. Carter Lumber Co.*, 694 N.W.2d 544, 546 (Mich. 2005). However, "a defendant's knowledge that the property was stolen, embezzled, or converted can be established by circumstantial evidence." *Id.* at 549.

Plaintiffs agree that Carter was not directly aware of the conversion; instead, they argue that Carter had "institutional knowledge of misappropriation of Plaintiffs' funds." (ECF No. 56-1, PageID.1471.)

10

Plaintiffs' argument hinges on imputing Houssam's knowledge to Carter. (ECF No. 56-1, PageID.1471-1472.)

"Conversion is an intentional tort" for which Michigan law provides a remedy under both common law and statute. *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 247 (Mich. 2010). In the context of intentional torts, a "plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee had actual knowledge[.]" *Travis v. Dreis & Krump Mfg. Co.*, 551 N.W.2d 132, 173-174 (Mich. 1996).

In this case, there is no dispute that Houssam was not a supervisory or managerial employee of Carter. (ECF No. 52, PageID.580.) Consequently, Houssam's knowledge of the agreement cannot be imputed to Carter as a matter of law.

Further, plaintiffs have presented no evidence that Carter had actual knowledge of the alleged conversion. From Carter's perspective, checks were submitted by an authorized signatory on behalf of a client. There is no evidence that any other supervisory or managerial employee was aware of the alleged conversion or the payment arrangement between plaintiffs and Houssam.

11

Considering the facts in the light most favorable to the plaintiffs, no reasonable jury could find that Carter had actual knowledge of the alleged conversion as required by Michigan law. As a result, Carter's motion for summary judgment on the aiding in conversion claim is **GRANTED**.

### C. 18 U.S.C. § 1964(c) – RICO (Count IV)

Regarding the RICO count, Carter argues that there is no evidence to support a finding in plaintiffs' favor on any element of the RICO charge. Specifically, Carter argues that (1) there is no evidence of an underlying predicate act; (2) there is no evidence Carter engaged in an alleged enterprise's affairs; and (3) there is no evidence of a pattern of racketeering activity. (ECF No. 53.)

To prove a RICO claim, plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985)). RICO also imposes a distinctness principle, which requires that "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person'

referred to by a different name." *Cedric Kushner Promotions*, 533 U.S. at 161.

In *Cedric Kushner Promotions*, the Court considered "a claim that a corporate employee is the 'person' and the corporation is the 'enterprise[.]'" *Id.* at 164. The Court found that an employee was sufficiently separate from the corporation from which he worked to satisfy the RICO "distinctness" principle. *Id.* However, *Cedric Kushner Promotions* did not foreclose the possibility that a corporation is not distinct from the employees which constitute it.

Subsequent Sixth Circuit precedent makes clear that the "distinctness" requirement does not apply in the reverse direction – a corporation is not liable under RICO for the ordinary conduct of its agents and employees. *See Shields v. UnumProvident Corp.*, 415 F. App'x 686 (6th Cir. 2011); *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473 (6th Cir. 2013). As stated by the Sixth Circuit, "[u]nder RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *In re ClassicStar Mare Lease Litig.*, 727 F.3d at 490. This is exactly Carter's argument – it cannot both be the RICO "enterprise" and be liable as a "person."

13

"If RICO imposed liability on a corporation for the ordinary conduct of its agents and employees, every claim of corporate fraud would automatically become a violation of RICO." *In re ClassicStar Mare Lease Litig.*, 727 F.3d at 490. "[I]ndividual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf[.]" *Id.* at 492.

Plaintiffs argue that "**Defendant Carter is ITSELF** the enterprise" for RICO purposes. (ECF No. 56-1, PageID.1475 (emphasis in original).) However, plaintiffs offer no evidence to support a finding that Carter is engaged in an enterprise which is distinct from the corporation itself. As such, there is no separate RICO enterprise, and no jury could find Carter liable for a RICO violation. As a result, Carter's motion for summary judgment on the RICO claim is **GRANTED**.

## IV. DEFENDANT ATCHISON

The sole certificate of service filed in this case appears to be signed only by Defendant Carter. (ECF No. 1-2, PageID.8.) Atchison has not filed a responsive pleading, no attorney has filed an appearance on his behalf, and the plaintiffs have not filed a notice of default against him. At the

time of removal, there were no service documents related to Atchison filed in Washtenaw County Circuit Court. (ECF No. 1, PageID.3.)

Under Federal Rule of Civil Procedure 12(a)(1)(A)(i), a defendant must serve an answer within 21 days after being served with the summons and complaint. Federal Rule of Civil Procedure 55 further permits a plaintiff to move for default judgment if the defendant fails to timely answer the complaint.

Pursuant to Federal Rule of Civil Procedure 4(m), if a defendant is not served within 90 days after the complaint is filed, the Court must dismiss an action without prejudice or order that service be made within a specified time. Fed. R. Civ. P. 4(m). The record demonstrates that over a year has elapsed from the date the complaint was filed.

Additionally, Rule 41(b) permits federal courts to sua sponte dismiss a claim for failure to prosecute. Fed. R. Civ. P. 41(b); *Steward v. City of Jackson*, 8 F. App'x 294, 296 (6th Cir. 2001) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962)). Eastern District of Michigan Local Rule 41.2 further states that the Court may dismiss a case for failure to prosecute when "the parties have taken no action for a reasonable time." E.D. Mich. LR 41.2.

As of January 14, 2025, plaintiffs have not filed a Certificate of Service with this Court stating that they served Atchison, nor have they filed a notice of default judgment. Atchison has made no appearance in this matter. Accordingly, the Court **DISMISSES** Atchison from this cause of action.

## V. CONCLUSION

**IT IS ORDERED** that the joint motion to extend the dispositive motion deadline (ECF No. 51) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the motion to quash subpoena for deposition of Hanadi Salami (ECF No. 41) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the motion to compel (ECF No. 46) is **DENIED**;

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to file sur-reply brief (ECF No. 60) is **DENIED**;

**IT IS FURTHER ORDERED** that Carter's motion for summary judgment (ECF No. 52) is **GRANTED** and the claims against Carter are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that defendant Atchison is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

Date: January 14, 2025

**s/Jonathan J.C. Grey**
Hon. Jonathan J.C. Grey
United States District Judge

## **Certificate of Service**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 14, 2025.

**s/ S. Osorio**
Sandra Osorio
Case Manager
