## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NABIL SALAMEY, et al.,

              Plaintiffs,           Case No. 23-cv-10630

v.                            Hon. Jonathan J.C. Grey

HOUSSAM SALAMI, et al.,

              Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 53) AND REMANDING CASE

This matter is before the Court on Houssam Salami and SS Designs, LLC's motion for summary judgment. (ECF No. 53.) The motion is fully briefed. The Court finds that the parties have adequately briefed the motion and therefore considers it without oral argument. E.D. Mich. LR 7.1(f). This case involves a construction dispute between longtime friends, Nabil and Sonia Salamey and Houssam Salami.[1] As the Court has previously described the facts of this case in its prior order, only those facts relevant to the current motion are restated. (*See* ECF No. 64.)

---

[1] Some documents in the record refer to Nabil as "Billy" and Houssam as "Sam." Due the similarities in last names, first names are utilized throughout this opinion and order.

## I.      BACKGROUND

Around 2019, Nabil and Sonia asked Houssam to build their house in Canton, Michigan (the "Construction Project"). However, the parties never entered into a written contract. (ECF No. 52, PageID.581 ¶3.) Despite this, there was an undisputed understanding that Houssam would be paid some undetermined fee for his work on the project. (*Id.*)

To facilitate payment for construction costs, Nabil opened a bank account with Community Financial Credit Union on which Houssam was an authorized signor (the "Construction Account"). (*Id.*, PageID.582 ¶5.) Checks from this account reflect that both Nabil and Houssam were owners and authorized users of the Construction Account. (*Id.*, PageID.583 ¶6.) The undisputed agreement between the parties required that all payments for the Construction Project would come out of the Construction Account. (*Id.*, PageID.582 ¶5.)

Houssam owns and operates SS Designs, LLC ("SS Designs"), a home builder. (*Id.*, PageID.580 ¶2.) SS Designs is a customer of Carter-Jones Companies, Inc. ("Carter"), which is a lumber and materials supplier. (*Id.*, PageID.580 ¶2.)

2

### a. Misapplied Checks

SS Designs maintains a credit account with Carter which allows SS Designs to purchase materials for multiple projects on credit. (*Id.*) Houssam is also employed by Carter and receives sales commissions from Carter. (*Id.* ¶1.)

For the Construction Project, Houssam used his SS Designs account with Carter to purchase building materials. (*Id.*, PageID.583 ¶6.) Houssam also used this account to purchase materials for other projects unrelated to the Construction Project. (*Id.*, PageID.584 ¶8.) When making payments to Carter on behalf of SS Designs, Houssam had to inform Carter which invoice each check should be applied to. (*Id.*) If Houssam provided no instruction, Carter credited payments towards the oldest open invoice on the SS Designs account. (*Id.*) In certain circumstances, Houssam failed to inform Carter of how to direct the checks from the Construction Account. (*Id.*, PageID.585 ¶10.) This meant that checks intended to be credited towards the Construction Project were instead applied to other, unrelated, SS Designs invoices. (*Id.*)

It is undisputed that certain checks were applied to the wrong project, although there is conflicting evidence as to how many checks

were erroneously applied or to how many invoices those checks were applied. (ECF No. 56-1, PageID.1465.) Houssam testified that he intended to conduct an accounting at the end of the Construction Project and deduct any erroneous charges from his ultimate fee. (ECF No. 52, PageID.586 ¶11.) There is conflicting evidence as to what Houssam's ultimate fee would be, as Nabil testified that he believed the fee would be 10% of the total cost of construction while Houssam testified that he believed he would receive a 20% fee. (ECF No. 58, PageID.1629.)

### b. "Kickbacks" from Subcontractors

Nabil and Sonia also allege that Houssam received "kickbacks" from subcontracts. As they describe, certain subcontractors sent payment to Houssam in exchange for being hired on the project. Nabil and Sonia object to this arrangement and have produced evidence that it is an ethical violation for contractors to receive such payments.

Nabil and Sonia also claim Houssam stated he was not making a profit on the project, which Nabil interpreted as meaning that Houssam wouldn't charge a fee. In his deposition, Houssam clarified that he meant he had not been paid yet, but would be paid at the end of the project. (ECF No. 53, PageID.1259.) Houssam further stated that he had never

said that he would not profit from his agreements with subcontractor and tradespeople. (*Id.*)

It is undisputed that the Plaintiffs have not paid Houssam any money directly or a fee for the project. (ECF No. 53, PageID.1260.) There are no liens on the property placed by suppliers, material men, or subcontractors. (ECF No. 53, PageID.1262.) There is no evidence that any supplier, material man, or subcontractor was not paid for work done on the project.

## II.   STANDARD

The Federal Rules of Civil Procedure provide that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). That is, the non-moving party must provide specific facts to rebut or cast doubt on the moving party's proffered facts.

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322–323.

## III. RICO (Count VI)

To prove a RICO claim, plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon*, 465 F.3d 719 at 723. The plaintiffs' RICO claim fails as they have not

6

provided any evidence of a predicate act of racketeering activity. Accordingly, summary judgment on the RICO claim is **GRANTED**.

With respect to bank fraud, to the Court's knowledge, every district court that has considered the question has held that "only a defrauded financial institution may assert bank fraud as a predicate act for a federal RICO claim." *American Biocare, Inc. v. Howard & Howard Attorneys, PLLC*, No. 14-cv-14464, 2016 WL 5661583 at *8 (E.D. Mich. Sept. 30, 2016) (collecting cases). The Court declines to take an opposing view and finds that plaintiffs may not assert bank fraud as a predicate act. The remaining predicate offenses upon which the Plaintiffs rely are violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1344 for mail and wire fraud, respectively.[2] (ECF No. 1-1, PageID.20.)

To make a claim for mail fraud, the plaintiffs must show the existence of the following elements:

> (1) *Scheme to Defraud.* The existence of a scheme or artifice to defraud, which involves a plan or course of action intended to deceive others to obtain money or property.
>
> (2) *Intent to Defraud.* The defendant must have the specific intent to defraud.

---

[2] The Court notes that the plaintiffs refer to the incorrect statutory sections in their complaint, chiefly 18 U.S.C. § 1028, which governs fraud related to identification documents.

(3) *Use of the Mails*. The defendant must use the United States Postal Service or any private or commercial interstate carrier in furtherance of the fraudulent scheme.

(4) *Material Misrepresentation or Omission*. The scheme must involve a material misrepresentation or concealment of a material fact.

*See Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 678, 698 (E.D. Mich. 2022). "The wire-fraud statute was modeled after the mail-fraud statute and, therefore, the same analysis applies to both." *Counts*, 606 F. Supp. 3d at 698. The only difference is that wire-fraud requires the use of interstate wires instead of the mails.

The plaintiffs allege that the checks sent from Houssam to Carter constitute predicate acts of mail or wire fraud as they "were undoubtedly transmitted via mail or wire to Defendant Carter's bank." (ECF No. 56-1, PageID.1474.) However, the plaintiffs provide no evidence to support this claim.

Furthermore, the plaintiffs have produced no evidence of intent to defraud. The plaintiffs attempt to piggyback a presumption of fraudulent intent from their MBTFA claim onto all their remaining claims. However, the fact that retention of funds under the MBTFA "shall be evidence of intent to defraud" does not save plaintiffs' RICO

8

claim as they have not presented any evidence that funds were retained prior to paying subcontractors. MCL § 570.153. For these reasons, summary judgment on the plaintiffs' RICO claim is **GRANTED**.

## IV.   JURISDICTION

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 because of the RICO claim, the only federal claim raised in this case. Under 28 U.S.C. § 1331(c)(4), the court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." As the Court has dismissed all claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining state law claims at issue and remands the case to Washtenaw County Circuit Court for any further determination of plaintiffs' state law claims (ECF No. 1-2) and the Houssam defendants' counterclaim. (ECF No. 9).

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996). However, "overwhelming interests in judicial economy may allow

a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial." *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1413 (6th Cir. 1991). Where there is "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state claims," a district court does not abuse its discretion if it retains the state law claims. *Id.* at 1412.

The remaining state law claims are as follows. First, plaintiffs' claims against SS Designs and Houssam are (1) embezzlement and breach of fiduciary duty; (2) fraud; (3) violation of the Michigan Builders Trust Fund; and (4) negligence and negligent supervision. (ECF No. 1-2, Counts I, III, IV, and V.) Finally, SS Designs and Houssam brought a counterclaim against plaintiffs which raises a host of state law claims and primarily seeks to recovery payment for work done on the Construction Project. (ECF No. 9.)

Although discovery has been completed, the pending state law claims would require a fact intensive determination separate from the issues of federal law involved in the RICO claim. For example, the embezzlement claim, which would be addressed as a conversion claim

10

under Michigan law, would require a close examination of the parties' intent. Additionally, the counterclaim raises a host of contract issues which would require a separate analysis of the discussions between, and understandings of, the parties to determine if a contract existed, and if so, what its terms were.

As the remaining claims involve fact intensive inquiries that are distinct from the federal claim, the question of judicial economy does not justify retaining these claims under supplemental jurisdiction. For that reason, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and finds it inappropriate to rule on the motion for summary judgment on those claims.

## V.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Houssam's and SS Designs' motion for summary judgment (ECF No. 53) is **GRANTED IN PART**. Plaintiffs' RICO (Count VI) claim is **DISMISSED WITH PREJUDICE**. Houssam's and SS Designs' motion for summary judgment (ECF No. 53) is **DENIED** as to all other remaining claims.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to Washtenaw County Circuit Court for any further determination of Plaintiffs' state law claims (ECF No. 1-2) and the counterclaim (ECF No. 9).

**IT IS FURTHER ORDERED** that defendants' motion to adjourn trial (ECF No. 59) is **DENIED AS MOOT**.[3]

**SO ORDERED.**

s/Jonathan J.C. Grey
Hon. Jonathan J.C. Grey
Date: January 15, 2025                    United States District Judge

---

[3] On January 15, 2025, the Court held a settlement conference. The matter did not settle. The Court drafted this order prior to the settlement conference.

### Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 15, 2025.

<u>**s/ S. Osorio**</u>
Sandra Osorio
Case Manager